IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**TODD SIERRA, RAYMOND
ZAMORA, MICHAEL GUTIERREZ,
KELLY ENYART**,

        Plaintiffs,

    vs.                          No. **CIV-07-763 MCA/ACT**

**CITY OF ALBUQUERQUE,
ALBUQUERQUE POLICE DEPARTMENT,
RAYMOND SHULTZ**,

        Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

     **THIS MATTER** comes before the Court on *Defendants' Motion for Summary Judgment* [Doc. 46], filed March 7, 2008, and *Plaintiffs' First Amended Motion for Declaratory Judgment* [Doc. 54], filed April 12, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants Defendants' summary-judgment motion with respect to Counts I and II and declines to exercise supplemental jurisdiction over Count III.  The Court denies as moot Plaintiffs' declaratory-judgment motion.

**I. BACKGROUND**

     The following facts are taken from the complaint or the summary-judgment record and are either uncontroverted or viewed in the light most favorable to Plaintiffs.

Plaintiffs in this case are all commissioned police officers with Defendant City of Albuquerque ("the City"), Albuquerque Police Department ("APD").  Plaintiff Todd Sierra has been employed with the APD since September 2003 and before that was a commissioned police officer with the Silver City Police Department for more than eight years.  Plaintiff Raymond Zamora has been employed with the APD since September 2001 and before that was  a commissioned police officer with the Santa Fe County Sheriff's Department for five years.  Plaintiff Michael Gutierrez also has been employed with the APD since September 2001 and before that was a commissioned police officer with the Sandoval County Sheriff's Department for nearly two years.  Finally, Plaintiff Kelly Enyart similarly has been employed with the APD since September 2001 and before that was a commissioned police officer with the University of New Mexico Police Department for approximately two years. [Doc. 16 at 2].  Plaintiffs are all "laterals," meaning they are officers who transferred into the APD from other law enforcement agencies.

At the time each Plaintiff was offered and accepted employment with the APD, the City's Personnel Rules and Regulations ("Rules and Regulations") provided that those officers wanting to take the promotional sergeants' examination needed "the equivalent of five (5) years of current continuous employment as a full time certified police officer." [Doc. 55; Exh. A at 200-5].  That "continuous employment" included service with out-of-state, out-of-county, or other in-county agencies.  However, when Plaintiffs inquired about sitting for the July 2006 sergeants' exam, they learned that the City had effected a unilateral change to the collective bargaining agreement executed by the City and Plaintiffs' union, the

Albuquerque Police Officers' Association ("the Union").  As a result of this unilateral alteration, the Rules and Regulations now provided that those wishing to sit for the sergeants' exam needed five years of *continuous APD* service.

Defendant Raymond Schultz is now and has since 2005 been the APD's Chief of Police.  Beginning with the 2006 sergeants' examination, Chief Schultz determined that the needs of both the APD and the City would best be met by promoting only officers with five years of APD experience.  He reasoned that, as front-line supervisors, sergeants need (1) familiarity with APD operations, personnel, and structure; (2) an understanding of the relationship between the APD and the community it serves; and (3) to be sufficiently versed in the ways of the APD to allow them to provide supervision, guidance, and instruction to those they command.  Chief Schultz believed that this required familiarity with and knowledge of the "structure and culture" of the APD could not be obtained from working in other law enforcement agencies but, instead, could only be learned as a result of working within the APD itself.  [Doc. 45; Exh. 1; Schultz Affidavit].

Dissatisfied with the change in the promotional process (as well as the one-sided manner by which it was made), Plaintiffs complained to the City's Labor Management Relations Board ("the Board"), which determined that the City had violated the collective bargaining agreement by making a change to the Rules and Regulations without (1) notifying the Union, (2) soliciting Union input, or (3) executing a *Memorandum of Understanding*. [See Doc. 55; Exh. D, "Decision and Order"].

However, because the Board also concluded that it lacked jurisdiction to issue a restraining order or an injunction, it advised Plaintiffs to take action in state court, which they did by filing a *Verified Complaint for Injunctive Relief, Application for Temporary Restraining Order, Preliminary and Permanent Injunction*. [Doc. 2; Exh. 3].  A temporary restraining order ("TRO") was issued but, because of logistical and timing issues,[1] was soon dissolved. [Doc. 16 at 5].  The City then appealed from the Board's decision, which decision was affirmed by State District Court Judge Ted Baca. [Doc. 55; Exh. F, May 23, 2007 *Memorandum Opinion and Order*].

On August 2, 2007, Plaintiffs filed a state-court *Amended Complaint for Civil Rights Violations, Breach of Contract, Equitable Relief and Damages* [Doc. 1; Exh. A], which was removed to this Court.  On November 30, 2007, Plaintiffs filed their three-count *Second Amended Complaint for Civil Rights Violations, Breach of Contract, Equitable Relief and Damages*, in which they allege that Defendants (1) violated their Fourteenth Amendment due process rights by denying them the opportunity to sit for the sergeants' examination and by improperly modifying the collective bargaining agreement, in violation of 42 U.S.C. § 1983; (2) violated their Fourteenth Amendment equal protection rights and retaliated against them by "engag[ing] in a campaign of petty harassment and adverse employment action against Plaintiffs as a result of the filing of this suit[;]" and (3) breached their duty to bargain collectively with the Union before making changes in Plaintiffs' working conditions. [See

---

[1]  These issues included that the City indicated an intent to appeal, and also that the written part of the exam had already been given.

generally Doc. 16].

On February 7, 2008, Plaintiffs filed a motion for declaratory judgment, which they amended on April 12, 2008. [See Docs. 31, 54].  On March 7, 2008, Defendants filed *Defendants' Motion for Summary Judgment*. [Doc. 46].

## II. ANALYSIS

### A. *Defendants' Motion for Summary Judgment* [Doc. 46]

#### 1. Standard of Review

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ."  Fed.R.Civ.P. 56(e).  Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Id.  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324.

5

It is not the Court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### 2. Count I: 42 U.S.C. § 1983 and Plaintiffs' Due Process Claims

In Count I, Plaintiffs contend that Defendants deprived them of their Fourteenth Amendment due process rights, in violation of 42 U.S.C. § 1983.  Section 1983 of Title 42 of the United States Code provides, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Section 1983 is not an independent source of substantive rights; rather it is a mechanism for enforcing federal rights conferred elsewhere, see Albright v. Oliver, 510 U.S. 269, 271 (1994), and provides a remedy "for any person who has been deprived of rights secured by the Constitution or laws of the United States by a person acting under color of law." Curley v. Klem, 298 F.3d 271, 277 (3rd Cir. 2002).  Accordingly, an analysis of a plaintiff's federal civil-rights claim necessarily begins by identifying the specific

constitutional right or rights allegedly infringed.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

In this case, Plaintiffs argue that (1) they "were unlawfully not permitted to sit for the sergeants examination[;]" (2) Defendants "knowingly made a change to [their] contract without following properly established negotiation procedure, thereby depriving them of their right to property[;]" and (3) they were "denied the opportunity for promotion to sergeant without due process of law." [Doc. 16 at 7].  The Court construes these allegations to set forth both substantive and procedural due process claims.

The Fourteenth Amendment prohibits any state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision."  Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1210 (10th Cir. 2000).  Accordingly, "to prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest."  Id.  For purposes of a *procedural* due process claim, "it is only after the plaintiff first demonstrates the existence and deprivation of a protected property interest that the plaintiff is constitutionally entitled to an appropriate level of process."  Teigen v. Renfrow, 511 F.3d 1072, 1078 (10th Cir. 2007) (*citing* Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir.1998)).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Board of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).  Still, property interests are not actually created by the Constitution.  "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Id.  The plaintiff bears the burden of demonstrating the entitlement, and "[w]hile the underlying interest is generally created by state law, 'federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.'"  Teigen, 511 F.3d at 1079 (quoting Town of Castle Rock v. Gonzales, 545 U.S. 748, 757 (2005)).  With these general principles in mind, the Court now turns to Plaintiffs' specific due process claims.

### a. Plaintiffs' Substantive Due Process Claims

As previously explained, this Court construes the *Second Amended Complaint* to set forth claims for the denial of substantive due process, inasmuch as Plaintiffs maintain that (1) they were denied the opportunity to sit for the sergeants' examination, and (2) Defendants made a change to their employment contracts "without following properly established negotiation procedure. . . ."[2] [Doc. 16 at 7].  The Court addresses these contentions in reverse

_____

[2]  While Plaintiffs' contract claim may sound like an alleged violation of *procedural* due process as well, Plaintiffs identify "[t]he property right at in this issue in this case [as] the . . . breach of [their] employment contract with Defendants that prohibited that opportunity [for

order.

Defendants concede that "there is no dispute here that [P]laintiffs had a protected property interest in their continued employment under [D]efendants' ordinances, rules and regulations." [Doc. 45 at 7]. However, Defendants also point out—and the allegations of *the Second Amended Complaint* itself tend to support[3]—that Plaintiffs have not been terminated from employment but, rather, remain with the APD. In <u>Teigen</u>, a case in which Colorado Department of Corrections ("DOC") officers argued that the DOC had acted in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment by blacklisting employees (including the plaintiffs) who maintained administrative appeals of state personnel actions, the Tenth Circuit acknowledged the plaintiffs' protected property interest in continued employment. Nonetheless, the Circuit expressly explained that the

> [p]laintiffs' property interest in their continued employment and employment status, however, cannot form the basis for their due process claims because they have not alleged they were terminated or deprived of their existing employment status as a result of the alleged blacklisting itself. . . . Rather, as noted by the district court, [the p]laintiffs remain employed by the DOC, apparently at the same rank, and do not allege any decrease in compensation as a result of the alleged blacklist. While [the p]laintiffs correctly point out state law prohibits discipline without cause, such rules do not implicate federal due process

promotion] and reliance on a bargained-for sequence of promotional opportunities in the future." [Doc. 52 at 8]. Procedural or substantive (or both), the initial step in the analysis—determining the existence of a protected property interest—is the same in either case.

[3] These allegations include that Plaintiffs "[*are*] commissioned police officer[s] with the City of Albuquerque, Albuquerque Police Department [and *have*] *been so employed*" since September 2001 (Plaintiffs Zamora, Gutierrez, and Enyart) or September 2003 (Plaintiff Sierra). [<u>See</u> Doc. 16 at 2 (emphasis added)].

9

concerns where, as here, [the p]laintiffs were not disciplined in such a way as to deprive them of a constitutionally protected property right.

Teigen, 511 F.3d at 1079.

In this case, Plaintiffs continue to be employed with the APD. Through their depositions, Plaintffs Zamora and Gutierrez testified that they have not been demoted, seen their responsibilities diminished, been the subject of false workplace accusations, or been treated unequally.[4] [Doc. 45; Exh. 2, Feb. 22, 2008 depo. of Raymond Zamora at 23-24; Exh. 3, Feb. 22, 2008 depo. of Michael Gutierrez at 22-23]. No plaintiff has alleged that he or she was subjected to disciplinary action.

Plaintiffs rely on Collado v. City of Albuquerque, in which the New Mexico Court of Appeals held that the City breached its employment contract with the plaintiff by failing to provide a valid, fair, and sound testing process by which lieutenants with the Albuquerque Fire Department could sit for the examination for promotion to captain. Collado v. City of Albuquerque, 132 N.M. 133 (N.M.App. 2002). Collado, however, does not assist Plaintiffs with their due process claims, because Collado dealt only with a breach-of-contract claim. Id. At 138 ("The City breached its contract by failing to provide a fair 1993 promotional process, resulting in Plaintiff losing the opportunity to be placed on the 1993 promotion list."). Defendants here do not dispute that a state district court has already determined that the City violated the collective bargaining agreement, or that that determination constitutes

_____

[4] Plaintiffs Zamora and Gutierrez have, however, alleged that the City has taken actionable adverse employment action against them, as discussed further in Section II.A.3. of this *Memorandum Opinion and Order*.

the law of the case. [See Doc. 45 at 6; see also Doc. 55; Exh. F, May 23, 2007 *Memorandum Opinion and Order* of Judge Ted Baca].   However, the breached collective bargaining agreement does not at the same time prove that Defendants deprived Plaintiffs of their due process rights, since "not every breach of contract by a state constitutes deprivation of a property interest in violation of the Due Process Clause entitling the person aggrieved to relief under 42 U.S.C. § 1983."  Brenna v. Southern Colorado State College, 589 F.2d 475, 477 (10th Cir. 1978).[5]

---

[5]  The Sixth Circuit elaborated on the breach-of-contract/due process violation interplay when, in rejecting the plaintiff/firefighter's "categorical substantive due process right to promotion" it explained:

> We conclude that no such right exists. Most, if not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process. The substantive Due Process Clause is not concerned with the garden variety issues of common law contract. Its concerns are far narrower, but at the same time, far more important. Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental.

> State-created rights such as [the plaintiff's] contractual right to promotion do not rise to the level of "fundamental" interests protected by substantive due process. Routine state-created contractual rights are not deeply rooted in this Nation's history and tradition, and, although important, are not so vital that neither liberty nor justice would exist if [they] were sacrificed.

> In the present case, we do not believe liberty and justice are threatened, in the constitutional sense, by the failure of the government and its officials to abide by their contract with [the plaintiff]. Governments breach contracts virtually every day without dire consequences ensuing to the human dignity or basic autonomy of the promisees. Indeed, legal philosophers have debated the degree to which the law should properly characterize any breach of contract as an "injustice" in the sense of moral

Nor is there a protectible property interest in the opportunity to be considered for a promotion, which is the other property right Plaintiffs argue they were denied. [See Doc. 52 at 8 ("The property right at issue in this case is the opportunity for promotion. . . .")].  In Kielczynski v. Village of LaGrange, Ill., the United States District Court for the Northern District of Illinois held that a town police officer had no protected property interest in promotional opportunities generally, and in her opportunity to compete for a sergeant's position in the village police department.  Kielczynski v. Village of LaGrange, Ill., 19 F.Supp.2d 877, 883 (N.D.Ill. 1998).  In so holding, the court relied upon Bigby v. City of Chicago, in which the Seventh Circuit held that police sergeants did not have a protected property interest in the as-yet unattained rank of lieutenant, particularly since promotion to lieutenant was not a matter of right but, rather, one of discretion.  Bigby v. City of Chicago, 766 F.2d 1053, 1056-57 (7th Cir. 1985).  As the Circuit explained,

> [p]romotion to lieutenant's rank is not a matter of right and is not governed by fixed rules which if complied with automatically entitle the applicant to promotion. "To have a property interest . . . a person . . . must have more than a unilateral expectation of it. He must, instead, have a legitimate *claim of entitlement* to it." [Roth, 408 U.S. at 577].  That is missing here.

---

> default. In any event, we are satisfied that in the usual breach of contract case such as this, failure to meet contractual obligations cannot be equated with the sort of injustice inherent in egregious abuse of government power.

Charles v. Baesler, 910 F.2d 1349, 1353 (6th Cir. 1990) (internal citations and quotations omitted).

12

Id. at 1057 (emphasis in original).

The same can be said in the instant case, because it is clear from the collective bargaining agreement sections addressing both eligibility to participate in the promotional process and the promotional process itself that success on the APD sergeants' exam does not automatically entitle the successful applicant to promotion.   Instead, as Plaintiffs acknowledge, "[o]fficers [who] sit for the sergeants['] examination and pass[] are placed on a ranked list, according to their score on the examination[] plus prior law enforcement [experience], education, etc.  Defendant APD then promotes officers to sergeant[] off of this list, *as positions become available*."   [Doc. 52 at 7 (emphasis added)].  Even successful placement on the list does not guarantee advancement since, for example, "[s]erious disciplinary infractions, including but not limited to nonfeasance, will be sufficient cause for the Chief of Police to remove a person from a promotional list." [Doc. 55; Exh. C at 200-12]. In other words, because the opportunity to sit for the sergeants' examination is merely the process that secures the ultimate substantive interest *(i.e.*, promotion to sergeant), Plaintiffs' claim of a due process violation must fail because a procedure, in and of itself, cannot constitute a property interest.  See Teigen, 511 F.3d at 1081.

### b. Plaintiffs' Procedural Due Process Claims

Plaintiffs next set forth a procedural due process claim when they assert that "[t]he Fourteenth Amendment provides that no person shall be deprived of property without due process of law.  Consequently, Plaintiffs cannot be denied the opportunity for promotion to sergeant without due process of law." [Doc. 16 at 7].  Defendants respond that Plaintiffs were

provided adequate process when they took their complaint first to the City's Labor Management Relations Board and then to state district court. [Doc. 45 at 9]. Plaintiffs disagree with this assessment. [Doc. 52 at 8].

To determine whether Plaintiffs were denied procedural due process, the Court asks, first, whether Plaintiffs possessed a protected interest to which due process protection was applicable. If so, the Court then asks whether Plaintiffs were afforded an appropriate level of process. See Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998). In this case, the Court need not reach the second question of whether Plaintiffs were afforded an appropriate level of process because, for the reasons explained above, Plaintiffs possessed no protected interest to which due process protections were applicable.[6] See Teigen, 511

---

[6] Even if the Court were to reach the second question, it would be constrained to conclude that Plaintiffs were afforded adequate process here. "The essential requirements of due process . . . are notice and an opportunity to respond." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). Where, however, the question is what process is due an individual denied a promotion, the determination becomes slightly more complicated, as case law and authority on this issue are sparse, if not non-existent, "presumably because no court has squarely held that such a denial implicates a constitutionally protected liberty or property interest." Brown v. City of Detroit, 259 F.Supp.2d 611, 620 n.7 (E.D.Mich. 2003). Still, courts have held that "grievance and arbitration procedures can (and typically do) satisfy the requirements of post-deprivation due process." Chaney v. Suburban Bus Div. of Reg. Transp. Auth., 52 F.3d 623, 630 (7th Cir. 1995).

In this case, Plaintiffs, through their union, took their complaints to the City's Labor Management Relations Board, which specifically determined that the City had breached its collective bargaining agreement with the Union by, among other things, failing to notify the Union that it was contemplating a change to the promotional process. At the Board hearing, the Union was represented by counsel and presented evidence, including exhibits and witness testimony. [Doc. 55; Exh. D].

Plaintiffs then *successfully* sought a TRO, seeking to prevent the administration of the sergeants' exam. [Doc. 55; Exh. E]. Ultimately, however, this TRO was dissolved due to "logistical and timing issues. . . ." [Doc. 16 at 5]. Thereafter, State District Court Judge Ted Baca affirmed the decision of the Board. [Doc. 55; Exh. F].

That logistical and timing issues may in the end have frustrated Plaintiffs' attempt to enjoin the administration of the sergeants' examination does not necessarily mean that Plaintiffs

F.3d at 1078 ("In the context of a procedural due process claim, it is only after the plaintiff first demonstrates the existence and deprivation of a protected property interest that the plaintiff is constitutionally entitled to an appropriate level of process.").  Accordingly, Defendants are entitled to summary judgment on Plaintiffs due process claims, both substantive and procedural.

### 3. Count II: Plaintiffs' Equal Protection Claims and Claims of Retaliation

The Equal Protection Clause of the Fourteenth Amendment prohibits any state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  In other words, "[t]he Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'" Plyler v. Doe, 457 U.S. 202, 216 (1982) (quoting F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920)).  Although the provision creates no substantive rights, "it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly."  Vacco v. Quill, 521 U.S. 793, 799 (1997).

In assessing equal protection challenges, courts apply various levels of review depending on the class or right allegedly burdened.  Thus, "[u]nless a . . . classification or distinction burdens a fundamental right or targets a suspect class, courts will uphold it if it

---

were denied adequate process, since "the requirements of procedural due process are satisfied by a post-deprivation hearing at which there is a meaningful opportunity to determine respective rights and liabilities. The fact that Plaintiff[s] did not receive the result [they] desired . . . does not mean that [they were] denied due process." Jackson v. Central New Mexico Corr. Facility, 976 F.2d 740, *2 (10th Cir. 1992) (unpublished opinion).

is rationally related to a legitimate end." Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 532 (10th Cir. 1998). An equal protection claim will fail "if there is *any* reasonably conceivable state of facts that could provide a rational basis for the classification." Copelin-Brown v. N.M. State Pers. Office, 399 F.3d 1248, 1255 (10th Cir.2005) (emphasis added). Finally, rational-basis review does not give the Court the option to speculate as to whether some other scheme could have better regulated the evils in question or even to strike the challenged policy as irrational simply because (1) it does not bring about the result it seeks to accomplish; (2) it lacks razor-sharp precision; or (3) no empirical evidence supports the assumptions underlying the choice. See Powers v. Harris, 379 F.3d 1208, 1217 (10th Cir. 2004).

In this case, although Plaintiffs assert that they "are a disparate class [and] laterals are always a separate group within APD[,]" [see Doc. 52 at 10, 11], they have not identified a suspect class of which they are members, nor do they claim that the policy at issue—requiring lateral transfers from other law enforcement agencies to complete five years of continuous APD service before being considered for promotion to sergeant—burdens a fundamental right. Accordingly, the Court must apply the above-outlined rational-basis scrutiny,[7] under which the Court concludes that the policy is rationally related to the legitimate stated end of ensuring that front-line supervisors such as sergeants are sufficiently

---

[7] See Teigen, 511 F.3d at 1083 ("Because Plaintiffs [a group of employees maintaining administrative appeals against their employer] do not claim they are members of a suspect class or that the challenged classification burdens a fundamental right, this court applies rational basis scrutiny.").

familiar with the APD to know its standard operating procedures, personnel, and its command structure so as to be able to guide, supervise, and instruct those under their command, and also to understand sufficiently the relationship between the APD and the community it serves.  See Kelley v. Johnson, 425 U.S. 238, 247 (1976) ("Choice of organization . . . for law enforcement personnel is a decision entitled to the same sort of presumption of legislative validity as are state choices designed to promote other aims within the cognizance of the State's police power.").  Defendants are entitled to summary judgment with respect to Plaintiffs' equal protection claims.

Count II of the *Second Amended Complaint* also includes Plaintiffs' contention that Defendants retaliated against them by "engag[ing] in a campaign of petty harassment and adverse employment action against Plaintiffs as a result of the filing of this suit, including, but not limited to, unequal treatment, demotions, diminished responsibilities and false accusations of workplace misconduct." [Doc. 16 at 8].

To establish a prima facie case of retaliation, Plaintiffs must show that (1) they engaged in some sort of protected activity; (2) Defendants took an adverse employment action against them; and (3) a causal connection exists between the protected activity and the adverse action.  If Plaintiffs do so, the burden shifts to Defendants to produce evidence of a non-discriminatory reason for the conduct, and then Plaintiffs have the burden of exposing that reason as pretextual.  It bears noting that "[a]n adverse employment action 'must be materially adverse to the employee's job status.'" Fischer v. Forestwood Co., Inc., 525 F.3d 972, 979 (10th Cir. 2008) (*quoting* Duncan v. Manager, Dep't of Safety, Denver, 397 F.3d

1300, 1314 (10th Cir.2005)).  By contrast, a mere inconvenience or an alteration of job responsibilities does not constitute an adverse employment action.  Sanchez v. Denver Pub. Schs., 164 F.3d 527, 532 (10th Cir. 1998).

As an initial matter, the Court notes that Plaintiffs Zamora and Gutierrez[8] both testified through their depositions that neither one has (1) been demoted; (2) had their responsibilities diminished; or (3) been subject to any false accusations in the workplace as a result of having filed the instant lawsuit. [Doc. 45; Exh. 2, Zamora depo. at 23-24; Exh. 3, Gutierrez depo. at 15-16].  However, when asked to describe the incidents of petty harassment and adverse employment action to which he believed he had been subjected, Plaintiff Zamora explained that officers with less seniority than he received new patrol units before he did, whereas Plaintiff Zamora is of the opinion that "it should go down as it—you know, as equipment is handed out, as police cars are handed out, it should start from the top and then work its way down." [Id.; Exh. 2; Zamora depo. at 20].  According to Plaintiff Zamora, he did not ask for a new vehicle, nor did he complain or even mention to anybody at the time that he failed to receive one. [Id.; Exh. 2; Zamora depo. at 20-21].  Four days after having been deposed in this matter, Plaintiff Zamora was notified that he would be receiving a new vehicle. [Doc. 52; Exh. K, Zamora Affidavit at 2].

Even assuming that Defendants engaged in an adverse employment action against

_____

[8] Only the allegations of retaliation as asserted by Plaintiffs Zamora and Gutierrez are considered here, as counsel for Plaintiffs represents that although "[t]he other two (2) plaintiffs relayed . . . odd incidents . . . the transcripts of their depositions were not available at the time of this Motion to argue and to provide to this Court." [Doc. 52 at 12].  Nor has there been any sort of request to supplement the record to include the referred-to deposition transcripts.

Plaintiff Zamora when they provided less senior officers with new patrol vehicles before giving one to Plaintiff, there has been no showing as to how this action was *materially* adverse to Plaintiff's job status.  While waiting for his new vehicle may have inconvenienced Plaintiff Zamora (though there is no allegation that it did), the denial of equipment, without more, generally does not amount to an *actionable* adverse employment action.  See Markel v. Bd. of Regents of University of Wisconsin Sys., 276 F.3d 906, 911 (7th Cir. 2002) (denial of "better" equipment was not adverse employment action, as "not everything that makes an employee unhappy is an actionable adverse action"); see also Hopkins v. Women's Div., General Bd. of Global Ministries, 284 F.Supp.2d 15, 25-26 (D.D.C. 2003) (summary judgment for employer where employee offered no evidence showing that delay in providing her with requested supplies and equipment had adverse effect on her employment).  Plaintiff Zamora therefore is unable to establish a prima facie case for retaliation.

As for Plaintiff Gutierrez, he testified that he was subjected to petty harassment and adverse employment actions when (1) a supervisor questioned the amount of overtime he had claimed on his time sheets, and (2) the APD's Department of Internal Affairs ("IA") began an investigation into an allegation that he had engaged in "an inappropriate relationship" with a recruit that he had trained.  [Doc. 45; Exh. 3, Gutierrez depo. at 15-22].  Taking these incidents in reverse order, the Court first notes that Plaintiff Gutierrez testified that he has not been disciplined as a result of the IA investigation, which he explained has not even been completed. [Id., Exh. 3, Gutierrez depo. at 19].  This is critical, because "[a]n investigation by itself does not constitute an adverse employment action."  Ellis v. Crawford, 2005 WL

525406, at *15 (N.D.Tex. 2005) (unpublished opinion); see also Breaux v. City of Garland, 205 F.3d 150, 158 (5th Cir. 2000) (police officers did not suffer adverse employment action by being subjected to internal affairs investigation).  Accordingly, Plaintiff Gutierrez is unable to establish a prima facie case for retaliation with respect to the IA investigation.

As for the questioning of Plaintiff Gutierrez's claimed overtime, the Court again notes that Plaintiff Gutierrez was subjected to no disciplinary action as a result of the inquiry. Although he testified that he "[l]ost a lot of sleep" during the period his time sheets were being reviewed, Plaintiff Gutierrez lost no pay. [Doc. 45; Exh. 3, Gutierrez depo. at 15-16]. The Court concludes that Plaintiff Gutierrez has not established a prima facie case for retaliation on the basis of his supervisor's actions in questioning his overtime.  But even if he had, the Court would nonetheless find that Defendants have offered a legitimate and non-discriminatory reason for the supervisor's actions—the supervisor confused Plaintiff Gutierrez with another police officer with a similar name.[9]  Plaintiff Gutierrez has not shown this reason to be pretextual; at most, he called it "a little strange."  [Id., Exh. 3, Gutierrez

---

[9]  At his deposition, Plaintiff Gutierrez explained:

> I was questioned by a lieutenant as far as my time sheets, and there was some question about some training time that was claimed, and I had all my time sheets.  I brought my time sheets in, spoke to my sergeant at the time.  And he said, "Well, I'll talk to the lieutenant."
>
> And then two days later, when I spoke to the lieutenant again, he said, "Don't worry about it.  There's someone with a similar name who we were looking at."

[Doc. 45; Exh. 3, Gutierrez depo. at 15-16].

depo. at 17].   The Court will enter summary judgment for Defendants on Plaintiffs' retaliation claims.

### 4. Count III: Plaintiffs' Breach-of-Contract Claims

In Count III, Plaintiffs assert that

> Defendants Schultz, APD, and City of Albuquerque, at all relevant times, had a duty to bargain collectively with the Albuquerque Police Officers. Association (APOA) concerning Plaintiffs' working conditions (ie., wages, working hours or overall working conditions) and yet made changes to Plaintiffs' contract without bargaining collectively and without valid authority.
> . . .
>
> Defendants Schultz, APD, and City of Albuquerque materially breached their contract with Plaintiffs.

[Doc. 16 at 9].

Section 1367 of Title 28 of the United States Code provides, in pertinent part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy  . . . ." 28 U.S.C. § 1367(a).  Pursuant to subsection (c), however, the Court may decline to exercise its supplemental jurisdiction if, among other things, it has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3).  In other words, once "the bases for federal subject matter jurisdiction have been extinguished[,] the district court may decline to exercise continuing 'pendent or supplemental jurisdiction over [the] plaintiff's state claims."  Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1236 (10th Cir. 1998)

(dismissing without prejudice plaintiff's claims for, *inter alia*, breach of contract after having entered summary for defendant on plaintiff's First and Fourteenth Amendment claims); see also Taylor v. Meacham, 82 F.3d 1556, 1564 n.1 (10th Cir. 1996) ("Once a federal court dismisses claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over related state law claims.").

In the instant action, the entry of summary judgment in favor of Defendants on Counts I and II extinguishes the basis for federal subject matter jurisdiction. See Lancaster, 149 F.3d at 1236. Accordingly, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' state-law claims. See 28 U.S.C. § 1367(c)(3). In so declining, the Court has considered whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction. See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995). The Court is not convinced that these factors weigh in favor of retaining jurisdiction. The employment and promotional policies that are set forth in the Rules and Regulation and are at issue here are creatures of state law, subject to evaluation under state law and, thus, best suited to adjudication in a state court. Notions of comity and federalism demand that a state court try such claims in the first instance, absent compelling reasons to the contrary. See Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990). In addition, the Court's decision not to exercise supplemental jurisdiction is not necessarily fatal[10] to Plaintiffs' state-law claims, as

---

[10] Although this Court's decision not to exercise supplemental jurisdiction over Plaintiff's contract claims is not necessarily fatal to those claims, they may very well be precluded.

28 U.S.C. § 1367(d) may provide for the tolling of any limitations period regarding these claims.  For these reasons, Plaintiffs' breach-of-contract claims will be dismissed without prejudice.  See Lancaster, 149 F.3d at 1236 (where district court had entered summary judgment for defendant on plaintiff's federal claims, affirming district court's decision to dismiss without prejudice plaintiff's state-law claims).

### B. *Plaintiffs' First Amended Motion for Declaratory Judgment* [Doc. 54]

The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28

---

The claim that Defendants breached the collective bargaining agreement by "ma[king] changes to Plaintiffs' contracts without bargaining collectively and without valid authority" [see Doc. 16 at 9] appears to be the same claim that was resolved when the Labor Management Relations Board determined that the City violated those "provisions within the Collective Bargaining Agreement requiring [(1)] the City to notify the Union of proposed changes, [(2)] the solicitation of input from the Union regarding proposed changes, and ([3]) the execution of a Memorandum of Understanding related to proposed changes[.]" [Doc. 15; Exh. D].

In Shovelin v. Central New Mexico Elec. Co-op., Inc., the New Mexico Supreme Court held that courts may accord preclusive effect to decisions of quasi-judicial bodies acting within the scope of their authority.  Shovelin v. Central New Mexico Elec. Co-op., Inc., 115 N.M. 293, 298 (N.M. 1993); see also RESTATEMENT (SECOND) OF JUDGMENTS § 83 (1982) ("[A] valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.").

Because this Court declines to exercise its supplemental jurisdiction over Plaintiffs' contract claims, it does not actually determine whether the four elements required for the application of claim preclusion—same parties or parties in privity; identity of capacity or character of persons for or against whom the claim is made; same subject matter; and same cause of action—exist such that Plaintiffs may not relitigate the seemingly identical contract claims on which they previously prevailed.  See Chavez v. City of Albuquerque, 124 N.M. 479, 483-484 (N.M.App. 1997) (listing elements required for application of claim preclusion).

U.S.C. § 2201(a). The Act does not "extend the jurisdiction of federal courts; it only 'enlarge[s] the range of remedies available.'" Prier v. Steed, 456 F.3d 1209, 1212 (10th Cir. 2006) (*quoting* Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950)). Moreover, power to issue declaratory judgments must lie in some independent basis of jurisdiction. Prier, 456 F.3d at 1212.

In this case, Plaintiffs seek a declaration that

> Defendants deprived Plaintiffs of property to which they had an interest, contrary to the Fourteenth Amendment of the U.S. Constitution, by breaching their employment contract and then unilaterally denying them the opportunity to sit for a promotional examination [and that t]his denial of opportunity was subsequent to an overt breach of employment contract between Plaintiffs and Defendants.

[Doc. 55 at 2]. As explained above in Section II.A.2, this Court has determined that Plaintiffs have failed to demonstrate a protected property interest, yet the existence of a protected property interest is a necessary prerequisite to the declaration that Plaintiffs seek. Additionally, the determination that Plaintiffs have not shown a protected property interest extinguishes the basis for federal subject matter jurisdiction. See Lancaster, 149 F.3d at 1236. Therefore, for the reasons that Defendants are entitled to entry of summary judgment in their favor, Plaintiffs' request for a declaration that Defendants deprived them of a property interest must be denied. See Prier, 456 F.3d at 1212 ("Power to issue declaratory judgments must lie in some independent basis of jurisdiction.").

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Defendants are entitled to entry of summary judgment in their favor with respect to Plaintiffs' due process, equal protection, and retaliation claims. Given this determination, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' remaining state-law contract claims. Finally, the Court denies Plaintiffs' declaratory-judgment motion as moot.

**IT IS, THEREFORE, ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. 46] is **GRANTED** as to Count I;

**IT IS FURTHER ORDERED** that Count I is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. 46] is **GRANTED** as to Count II;

**IT IS FURTHER ORDERED** that Count II is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Count III is **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that *Plaintiffs' First Amended Motion for Declaratory Judgment* [Doc. 54] is **DENIED as MOOT;**

**IT IS FURTHER ORDERED** that the **PRETRIAL CONFERENCE** set for TUESDAY, October 7, 2008, at 9:00 a.m.; the **CALL OF THE CALENDAR** set for THURSDAY, December 4, 2008, at 9:00 a.m.; and the **BENCH TRIAL** set for MONDAY, December 8, 2008, at 9:00 a.m. are hereby **VACATED**.

**SO ORDERED** this 11th day of September, 2008, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge